Joe Monasco *v.* State.

[62 South. 427.]

1. CHATTEL MORTGAGES. *Advances. Sale of mortgaged property. Code* 1906, *section* 1168.

Where a trust deed recites that the wife as a party of the first part is indebted to a merchant in a given sum and expects further advances and that she, in order to secure the indebtedness, conveys her entire interest in any and all crops raised upon certain lands belonging to her or any other lands she may acquire and the name of the husband is signed thereto, but nowhere else appears in the instrument, such trust deed does not cover crops raised by the husband or his tenant, and the fact that the word "him" instead of "her" is used in describ-

ing the party to whom the further advances are to be made, does not change the essential fact that the property conveyed in trust was conveyed by the wife and not by the husband.

2. CRIMINAL LAW.  *Code* 1906, *section* 1168.

Where a defendant delivered certain cotton to a company telling the representative that if he would let him have a sum of money on the cotton, the company could take charge of the cotton as he would settle the following week and the money was advanced with this understanding, such a transaction was neither a sale, barter, exchange or mortgage and was not violative of Code 1906, section 1168.

APPEAL from the circuit court of Covington county.

Hon. W. H. HUGHES, Judge.

Joe Monasco was convicted of selling mortgaged cotton and appeals.

The facts are fully stated in the opinion of the court.

*M. U. Mounger,* for appellant.

This was a very weak case against the defendant, and the verdict of guilty must undoubtedly have been caused by either prejudice or undue influence. Defendant was convicted, evidently on the testimony of W. J. Morris, agent for the prosecuting corporation who attested that he bought the cotton straight out. The great weight of evidence is against this theory. In the first place, the first count in the indictment alleges, that it was deposited for future sale. Morris told Moore immediately afterwards, that he did not buy it; that he got uneasy about it and sent for it. . This evidence given by disinterested witnesses for the state corroborates appellant in the point that there was no sale. The first count in the indictment does the same thing; and yet on the unsupported testimony of Morris, an interested witness, who had an old account that he wanted to collect against appellant, the appellant was convicted, although he was further corroborated by Fairchilds and Rawls as above referred to. The state relied upon the conviction of appellant for

failing to tell the Ship Island Lumber Co. about the R. Watts & Co. trust deed. This was the only trust deed introduced in the record.

It was alleged in the indictment that there was a lien in favor of R. Watts & Co. It was not alleged that there were several liens so far as this trust deed is concerned. Defendant testified that there was no intention to give a lien on the crop and that he did not know that R. Watts & Co. held a lien on the crop. His testimony on this point is nowhere disputed, so far as this trust deed is concerned; so that there is no evidence to show that appellant knew there was a trust deed or lien on the crop, unless it be argued that he knew that he himself held a trust deed on this cotton which he had transferred to R. Watts & Co.; that they held the same at the time the money was advanced, and that he was guilty for failing to inform the Ship Island Lumber Co. of this trust deed. In the first place in regard to this, he was being tried for obtaining money under false pretenses under section 1166, and not for selling mortgaged property under section 1168. The state proceeded as if they were trying him for obtaining money under false pretenses. It would not have been fair to try defendant for two crimes at the same time. Again it would have been a variance because it was not alleged that R. Watts had more than one lien; and if they introduced the one to prove another it would have taken the defendant by surprise. There is absolutely no proof in the record that R. Watts held any other trust deed from Monasco except on cross-examination. Monasco said something about endorsing the deed he held from A. L. Fairchilds. There is absolutely no proof in the record that R. Watts & Co. held that trust deed at the time the money was advanced to Monasco by the Ship Island Lumber Co.; and there is no proof that it was unpaid so far as R. Watts & Co. is concerned. If it was put up with R. Watts & Co. at all it must have been placed there at a collateral security;

and there is no proof that at that time it was unredeemed. Appellant was a very ignorant man, couldn't read and write; and I don't think that he knew whether or not this trust deed had ever been endorsed to R. Watts & Co. If it had been it would have been easy to have proven it by the original deed or the record of the same. I do not really think that the deed was ever transferred or endorsed to R. Watts & Co. at all, but the court instructed the jury that they could not convict the defendant for failing to tell the Ship Island Lumber Co. about the deed from A. L. Fairchilds to appellant, or failing to tell the Ship Island Lumber Co. about any other lien of R. Watts & Co. So it must necessarily follow that defendant was convicted merely because he did not tell the Ship Island Lumber Co. that R. Watts & Co. held the trust deed, as we have shown. The record conclusively shows that appellant didn't know about this trust deed, hence his conviction for that reason alone was erroneous. Again the trust deed referred to was a deed from Mrs. J. N. Monasco to R. Watts & Co., and was signed by appellant as her husband. The only way that the record shows or attempts to show that the cotton in question was mortgaged, was by showing that it was cotton raised by A. L. Fairchilds on a place claimed to be owned by appellant. The mortgage referred to gave R. Watts & Co. a lien on any cotton that the hands of Mrs. J. N. Monasco might raise; but it did not give a lien on any cotton that the hands of appellant might raise, hence there was no proof in the record that R. Watts & Co. had a lien on this particular cotton.

Instruction number one for the state is wrong because it instructs the jury that if they believe that defendant obtained the money in manner and form as charged in the second count in the indictment, then it is the sworn duty of the jury to convict; it is not charged in the second count in the indictment that appellant knew of any deed and trust to R. Watts & Co., but before the jury

could legally be authorized to convict, it must be alleged in the indictment that he knew of the lien, and then be proved that he knew of it. According to this instrument, the defendant could be convicted without this being alleged and without its being proven. This seems to me to be absurd.

The court erred in refusing to give the appellant instruction number three. This was the law of the case evidently; the defendant wanted this instruction so that they could put it square up to the jury that under the law and the evidence in this case they would have to believe that there was a straight out sale of the cotton to Morris before they could convict. As before said, that was the theory of the state in the case, and there was a straight out sale; because Morris swore that there was a straight out sale. But when the state gets its instructions, it instructs the jury that if defendant bargained the cotton and so forth, he is guilty, and when defendant asks for instructions on the theory that the title must have passed before there can be a conviction in this case, the court refused the instruction. If we had gotten our instructions, we could have said to the jury, ''Before you can convict in this case, you must believe that there was a complete sale beyond all reasonable doubt; you cannot believe there was a complete sale beyond a reasonable doubt because there was no price entered on the books at the time in the regular business way; there was no entry at all made on the books at the time. The cotton was not actually turned over to the Ship Island Lumber Co. Morris told Moore he did not buy it. Hence you cannot believe beyond all reasonable doubt that there was a sale. ''Under the state's instructions, counsel for the state could argue and did argue to the jury, if you believe there was some negotiations in regard to the cotton and that the Ship Island Lumber Co. advanced $125 to defendant, and defendant did not tell the Ship Island Lumber Co. all about the liens that existed on said cotton,

you must find him guilty." Under these instructions the state had easy sailing.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

It is insisted in the assignment of error that there is no proof that Monasco knew that there was a lien on the cotton in question, and that there is no proof that R. Watts & Co. had actually a lien on this particular cotton.

In answer to these propositions, it is only necessary to refer the court to the deeds of trust and the testimony, and it will completely answer these contentions. It was in proof by the deeds of trust that covered all the property that Monasco had either grown himself or that any of his tenants had grown. It is argued that because in the body Mrs. Monasco's name appears, and not that of the appellant, that it did not cover his crops. A complete answer to this is that the signing of the instrument by Monasco and the delivery of it to Watts & Co. constitutes a contract. Besides this, it is also shown that Monasco himself transferred to Watts & Co. a deed of trust on a portion of this cotton given him by Fairchilds, and that this deed of trust was unquestionably on the cotton in question, and constitutes a valid lien on it, and there is no question about his transferring it to Watts & Co. nor of having a right, under the law, to hold the cotton. In cases where intent is involved, that is an important question or an important fact. Monasco makes no pretense of denying knowledge of the deed of trust that Fairchilds had given him, and which he had transferred, but he himself testified that he knew that this was his. If that be true, it is certainly shown that he intended to defraud Ship Island Lumber Co. in the transaction, because he knew, and was bound to know that this lien was of that effect. When these facts are taken in connection with the penalty it shows conclusively that Monasco

knew and remembered the entire transaction, and that his design was to defraud. He practically makes out every element of the crime against him in his own testimony, the only dispute being as to whether he sold the cotton or merely intended to sell it in the future. On this point there is the evidence of Morris, and it is clear that the jury accepted his version of it, and on a conflict of evidence there could be no question but what the finding of the jury concludes this court.

The allegations of the indictment are that Watts & Co. held a valid deed of trust or lien against the cotton. Each deed of trust proves that fact. While it is not a case involving two separate crimes, because if there was more than one deed of trust on the cotton, the selling would only constitute one crime, but either deed of trust might be offered in evidence, or both of them might be offered in evidence, and if either is believed, it would make out the case, but if it even made out separate offenses, it would still be competent evidence, because in that case intention to defraud is involved in the indictment, and it constitutes one of its elements, and it is well recognized law that where intent or guilty knowledge in respect to a fact is an element of the offense charged, that evidence of other acts of the accused manifesting that intent or knowledge is competent, notwithstanding it may establish the commission of another offense, not charged in the indictment. Abbott's Crim. Trial Brief, p. 514, and authorities there cited. *Kind* v. *State,* 66 Miss. 502, 6 So. 188; *Cotton* v. *State,* 17 So. 372.

In construing section 1166 of the Code, being one of the statutes first cited above, the court held that intent was necessarily involved in cases of that kind. Of course, any fact necessary to establish intent is competent evidence on such propositions. *Pittman* v. *State,* 58 So. 532.

Appellant assigns as error of the court in permitting the state to ask the defendant over his objection if he did not know that other deeds of trust were on the cotton.

This proposition has not been argued in the brief of counsel, but as it might be argued on oral argument, I desire to say that where the defendant voluntarily takes the stand, he must tell all that he knows about the transaction, and cannot shield himself from disclosing facts against his interest, or which make out the charge against him.

I think that there is nothing, taking the whole record, that would warrant the court in giving the appellant a new trial. On his own testimony he is guilty of fraud, and no error of a technical nature should cause a reversal of this case, because the only possible result that could have been reached by any honest jury exercising ordinary common intelligence was reached by the jury in this case.

Cook, J., delivered the opinion of the court.

Appellant was indicted, under section 1168 of the Code of 1906, for selling two bales of cotton previously mortgaged without informing the purchaser of the incumbrance.

According to our understanding of the evidence, the cotton in question was the property of appellant, and was raised by him, or his tenant; certain it is that it did not belong to Mrs. I. M. Monasco, so far as the record discloses. The instrument, or so much thereof as is necessary to an understanding of this opinion, which the state introduced in evidence to show that the cotton alleged to have been sold by appellant had been previously conveyed to a trustee to secure an indebtedness, reads this way:

"This deed of trust, made the 24th day of January, A. D. 1910, witnesseth: That whereas, Mrs. I. M. Monasco, party of the first part, is indebted to R. Watts & Co. in the sum of ($275.00) two hundred and seventy-five dollars, evidenced by one promissory note of even date, with ten per cent. interest from date; and whereas, said

party of the first part expect said R. Watts & Co. to advance him money, and sell supplies and merchandise during the year 1910, at such prices as may be agreed upon at the time of delivery or at the usual and customary credit prices in the town of Seminary, Miss.; and whereas, said party of the first part has agreed to secure the payment of said indebtedness, as also any further amounts that may be advanced as aforesaid, and not mentioned herein: The party of the first part, in consideration of the premises, as well as for ten dollars to be paid by J. M. Moore, trustee, does hereby bargain, sell, assign, set over, and convey to said trustee the following described property, situated in Covington county, Miss., viz.: My entire interest in any and all crops of cotton, corn and all other agricultural products planted and now being raised by me and any hands I may employ during the year 1910, on land belonging to me, now leased and occupied by me, or any other land I may rent and cultivate during said year, and any and all cotton and corn that may be due said party of the first part as rent for said year, and my unexpired lease of the land aforesaid, and the northwest quarter of the southwest quarter of section twenty-five, township seven north, of range 15 west, and any increase of property, real or personal, that may be hereafter acquired by purchase or otherwise, the title to which unto said trustee, or any successor, I warrant and agree forever to defend. In trust, however," etc.

This instrument was signed by Mrs. I. M. Monasco and by appellant, J. M. Monasco. It will be observed that Mrs. Monasco is named in the instrument as "party of the first part," and that "the party of the first part" conveys the property described to J. M. Moore, trustee. It will be noted that the name of appellant is nowhere mentioned in the body of the instrument. The instrument is unambiguous, and needs no interpretation. It is recited that the party of the first part, Mrs. I. M. Mo-

nasco, is indebted to R. Watts & Co. in the amount of two hundred and seventy-five dollars, evidenced by a promissory note, and that R. Watts & Co. is expected to make further advances, and that in consideration of the premises "the party of the first part" executes the deed of trust. It is true that the word "him," instead of "her," is used in describing the party to whom the further advances are to be made; but this does not change the essential fact that the property conveyed in trust was conveyed by Mrs. Monasco, and not by appellant. It follows, therefore, that the cotton in question was not covered by this deed of trust.

The theory of the state is that appellant bargained and delivered the cotton to the Ship Island Lumber Co.; and that is precisely what the indictment alleges. The evidence for the state tends to show that appellant delivered the cotton to the Ship Island Lumber Co. telling the company's representative that, if he would let him have one hundred and twenty-five dollars on the cotton, he could take charge of it, and he (appellant) would have a settlement with him the following week. So the company paid appellant one hundred and twenty-five dollars and took charge of the cotton. This was neither a sale, barter, exchange, or mortgage, nor did the transaction constitute the giving of a deed of trust upon the cotton. Before appellant could be convicted under section 1168 of the Code, it was necessary for the state to show that appellant either sold, bartered, exchanged, mortgaged, or gave a deed of trust on the cotton. This was not shown, and even though the deed of trust given by Mrs. Monasco, and signed by appellant, covered the cotton, the conviction cannot stand, because the evidence does not prove the crime charged in the indictment.

*Reversed and dismissed.*